# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

CURWOOD, INC.,

    Plaintiff,

            Case No. 07 - C - 544

v.           Honorable William C. Griesbach

PRODO-PAK CORPORATION,

    Defendant.

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO TRANSFER VENUE

---

The Defendant Prodo Pak Corporation's (PP) Motion to Transfer Venue of this case to New Jersey should be denied because venue is appropriate in the Eastern District of Wisconsin, Green Bay Division.

## **INTRODUCTION**

This case is a story about PP creating a disastrous situation for Curwood, and then intentionally making it worse.

PP called Curwood and proposed to build and sell to Curwood two (2) packaging machines (Machines). Curwood would then lease the Machines to a company named Degussa – and Degussa, in turn, would buy packaging products from Curwood to be used in the Machines.

Proposals were passed, purchase orders were sent, a lease for the Machines was signed and Curwood paid for the Machines. All was good until the Machines did not work as proposed, warranted and required and Degussa cancelled its lease of the Machines.

PP then offered to buy the Machines back from Curwood, at a discount of course. Again Curwood agreed and transferred title and ownership of the Machines back to PP. PP, however, had other ideas and never paid Curwood and refused to discuss the situation.

Being left with no alternative, Curwood sued PP in this Court initially alleging breach of contract, breach of warranty and misrepresentation because the Machines did not work, and breach of contract and property loss through misrepresentation for PP's failure to pay for the Machines after Curwood sent them back.[1]

PP then filed its Motion to Transfer Venue to New Jersey which is now being opposed by Curwood.

## STATEMENT OF FACTS

Curwood is a corporation organized under the laws of Delaware and duly authorized to do business in Wisconsin, with its corporate offices located at 2200 Badger Ave, Oshkosh, Wisconsin. Curwood is in the business of manufacturing flexible packaging for worldwide distribution. (First Amended Complaint, hereinafter "1st A. Compl." ¶1; Affidavit of Steven J. Price in Opposition to Defendant's Motion to Transfer Venue, hereinafter "Price Aff." ¶3). Curwood has no facilities, offices or property in the state of New Jersey. (Price Aff. ¶4).

PP is a New Jersey corporation with its principal offices located at 77 Commerce Street, Garfield, New Jersey. PP is in the business of manufacturing pouch and tube filling and sealing machinery for worldwide distribution. (1st A. Compl. ¶2).

On October 1, 2003, John Mueller (Mueller), President of PP, sent Jeff Hopp (Hopp), the Marketing Manager for Curwood, an unsolicited fax communication, summarizing and

---

[1] The day after PP filed its Motion to Transfer Venue, Curwood filed a First Amended Complaint adding causes of action for unjust enrichment and *quantum meruit* also based on PP's failure to pay for the Machines. Those additional claims are not germane to the venue issue currently before the Court.

2

proposing a three-way business relationship between PP, Curwood and Degussa Flavors and Fruit Systems, US, LLC (Degussa). In this relationship, PP would manufacture the two packaging Machines and sell them to Curwood. Curwood would then lease the Machines at no cost to Degussa in exchange for Degussa purchasing packaging material from Curwood. (1st A. Comp. ¶5; Hopp Affidavit in Opposition to defendant's Motion to Transfer Venue, hereinafter "Hopp Aff." ¶3, Price Aff. ¶5).

As a follow up, on October 8, 2003, Mueller traveled to Curwood headquarters in Oshkosh, Wisconsin, and met with Curwood representatives. In this meeting, the Machines and scope of the project were discussed. (Hopp Aff. ¶4).

Mueller then sent a letter to Hopp by U.S. mail recapping the discussions from the face-to-face meeting the previous day. With this correspondence, Mueller also included a draft proposal to build the Machines. Curwood then had various telephonic, fax and e-mail communications from Mueller regarding certain terms of the draft proposal and agreement was reached on a final proposal on October 30, 2003. This proposal was then sent from PP to Curwood in Oshkosh, Wisconsin and it is the proposal that governed the conduct of the parties (Proposal). (1st. A. Compl. ¶6; Hopp Aff. ¶¶5, 6).

Curwood then signed a lease agreement with Degussa for the Machines. The lease was for a term of thirty-six (36) months, and required Degussa to purchase from Curwood certain quantities of packaging film. (1st A. Compl. ¶8; Hopp Aff. ¶7).

As part of the agreement and transaction with PP, in November 2003, Curwood sent to PP Purchase Order No. 30926-03 for the Machines. (1st A. Compl. ¶9; Hopp Aff. ¶8). (Purchase Order). The Terms and Conditions of Purchase on the reverse of each page of the Purchase Order contain the following relevant language:

1. <u>Complete Agreement</u>.  This purchase order, including these general conditions and any specifications or attachments hereto, constitutes the sole and entire agreement between Buyer and the Seller.  <u>No other terms or conditions shall be binding upon Buyer</u>. Should any of the terms and conditions of this purchase order be at variance with any of the terms and conditions of sale of the Seller, it is understood and agreed that <u>the terms and conditions of this purchase order will prevail</u>.

\* \* \*

16. <u>Applicable Law</u>.  <u>The laws of the state where the Buyer's plant or location is situated</u> to which the terms sold hereunder are to be shipped or at which the services are to be performed, <u>shall govern all matters relating to this order as to formation of obligation, interpretation and performance</u>.

(Emphasis added).

At the end of the Purchase Order, just below the signature line it states:

**THIS ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF**

(Emphasis in original).

The intent and effect of Paragraph 1 of these Terms and Conditions was to nullify the venue and choice of law provisions upon which PP relies in an attempt to transfer venue of this case to New Jersey.

The intent and effect of Paragraph 16 of the Terms and Conditions was to obtain and maintain venue in Wisconsin.  The Machines were built at the request of and for the benefit of Curwood, with its main plant and location in Oshkosh, Wisconsin.  Indeed, PP's relevant communications (in person, fax, phone, voicemail, email) with Curwood were directed at Curwood's plant and location in Oshkosh. (Price Aff. ¶6; Price Aff. Ex. A).

On December 9, 2003, PP faxed Curwood a letter in Oshkosh, Wisconsin confirming that the machine drawings had been released for fabrication.  (1st A. Compl. ¶10; Hopp Aff. ¶9; Hopp Aff. Ex. A).

4

Beginning in June 2004 and continuing until the termination of the project, there were significant problems and defects with the Machines. Curwood spent many man hours attempting to remedy the defects including twelve (12) formal service calls by Curwood service personnel from July 2004 through February 2005. Also as part of the parties' attempts to fix the problems with the Machines, with the knowledge of and at the request of PP, Curwood fabricated parts in its machine shop located in New London, Wisconsin and shipped them to PP. The total value of these parts is estimated at between $5,000 and $8,000. There were also numerous telephonic, fax and e-mail communications from PP to Curwood personnel in an attempt to have the Machines conform to the terms of the Proposal and to perform as represented, warranted and required by Degussa. (Hopp. Aff. ¶10).

In or around July 2004, one Machine was shipped by PP to Degussa at its filling plant located in Gardena, California. Delivery of this Machine operated to transfer title, ownership, possession and property of the Machines from PP in New Jersey to Curwood in Oshkosh, Wisconsin. (1st A. Compl. ¶11; Defendant's Answer to Plaintiff's Original Complaint, hereinafter "Original Answer" ¶11; Hopp Aff. ¶11). The second Machine never left New Jersey.

On October 20, 2004, without solicitation or invitation by Curwood, PP sent to Curwood's Meat Market Manager also located in Oshkosh, Wisconsin, two separate alternative proposals for another machine for a separate project. (Hopp Aff. ¶12).

Because the Machines never worked properly, on January 28, 2005, senior counsel for Degussa notified Curwood in writing of its intent to cancel the lease for Curwood's failure to provide fully operable equipment. (1st A. Compl. ¶ 12; Hopp Aff. ¶13; Hopp Aff. Ex. B.).

Curwood then received an e-mail from Mueller stating PP may have leads on potential buyers for the Machines if Curwood would sell the Machines back to PP and provided an

5

estimate of the cost to retro-fit the Machines for new uses. (1st A. Compl. ¶13; Hopp Aff. ¶14; Hopp. Aff. Ex. C).

On May 23, 2005, Hopp had a telephone conversation with Mueller about a potential sale by PP of the Machines to a customer in Bangladesh. Mueller indicated that Curwood would need to relinquish title and ownership of the Machines to PP for retro-fitting.

On June 7, 2005, a verbal agreement was reached between Curwood and PP for PP to buy the Machines back from Curwood for a payment of $240,000 and PP would also issue a credit for its last invoice to Curwood of $63,931.25. PP would also be required to present to Curwood a letter of credit demonstrating that the funds for the $240,000 purchase price were available to PP. On June 10, 2005, Mueller sent Hopp an email outlining the financial terms of this verbal agreement and faxed a draft letter of credit on June 13, 2005. (1st A. Compl. ¶¶13, 14; Hopp Aff. ¶¶15-18; Hopp Aff. Exs. D, E).

On June 20, 2005, Mueller sent Hopp an e-mail indicating PP anticipated shipping the Machines in late October or early November and requested a change in the date of payment for the Machines. On July 21, 2005, Mueller forwarded to Curwood in Oshkosh written confirmation of the final terms of PP's purchase of the Machines back from Curwood. (the Buy Back Contract) In this correspondence, PP affirmatively represented Curwood would receive the purchase funds on or before December 1, 2005. (1st A. Compl. ¶¶ 15, 16; Hopp Aff. ¶¶19, 20; Hopp Aff. Exs. F, G)

On July 29, 2005, relying on discussions with Mueller and the Buy Back Contract, Curwood confirmed in writing its transfer of title and ownership of the Machines from Wisconsin back to PP and acknowledged again the written terms and conditions of the Buy Back Contract. The first Machine was then shipped from California back to New Jersey.

6

On August 23, 2005, Mueller e-mailed Curwood indicating new parts had been released for fabrication on the Machines in preparation of resale of them by PP. (1st A. Compl. ¶¶18, 19; Hopp Aff. ¶¶21, 22; Hopp Aff. Exs. H, I; Original Answer ¶19).

Curwood received no payment from PP by the December 1, 2005 deadline. To date, PP has not paid Curwood any money for the Machines. (1st A. Compl. ¶¶21-23; Hopp Aff. ¶¶23-26; Hopp Aff. Ex. J; Original Answer ¶22).

In addition to the specific in-person, mail, fax and e-mail contacts detailed above, there were numerous other contacts and correspondence by U.S. mail, fax, e-mail and telephone from PP to Curwood in Oshkosh, Wisconsin. Through the course of dealings between PP and Curwood, PP also forwarded to Curwood at its offices in Oshkosh, Wisconsin, invoices for payments due. Curwood made all payments except for the final payment of $63,931.25. All payments were made by Curwood from Oshkosh, Wisconsin.

Curwood had at least five (5) employees located in Oshkosh, Wisconsin, work on this project. All of these employees are potential witnesses. Alternatively, PP listed in Paragraph A of its Rule 26 Initial Disclosures only one (1) employee, Mueller, as an individual with discoverable information that it may use to support its claims or defenses. (Hopp Aff. ¶¶27-29; Ex. K).

All of Curwood's documents and tangible evidence, except the Machines, are located in Oshkosh, Wisconsin. The current location and condition of the Machines is unknown to Curwood. (Hopp Aff. ¶30).

## ARGUMENT

## I.    PRODO PAK'S VENUE LANGUAGE DOES NOT CONTROL

In its attempt to have venue transferred, PP relies solely on language in the Proposal stating:

> This agreement and any purchase or sale arising hereunder shall be governed, construed, and interpreted in accordance with the laws of the State of New Jersey. Any litigation concerning this agreement shall be under the jurisdiction of a state or federal court located within New Jersey.[2]

(PP's Initial Brief in Support of Motion to Transfer Venue, p. 1).

Consequently, if the Court finds that this language does not control venue in this case, PP's Motion must fail.

PP's brief argument completely ignores the language in Curwood's Purchase Order as follows:

> 1.    Complete Agreement. This purchase order, including these general conditions and any specifications or attachments hereto, constitutes the sole and entire agreement between Buyer and the Seller. No other terms or conditions shall be binding upon Buyer. Should any of the terms and conditions of this purchase order be at variance with any of the terms and conditions of sale of the Seller, it is understood and agreed that the terms and conditions of this purchase order will prevail.

> * * *

> 16.    Applicable Law. The laws of the state where the Buyer's plant or location is situated to which the terms sold hereunder are to be shipped or at which the services are to be performed, shall govern all matters relating to this order as to formation of obligation, interpretation and performance.

---

[2] Although not directly relevant to the question of venue, Curwood does not waive and reserves the right to argue at any time in this litigation that the Terms and Conditions attached at the end of Exhibit A to the affidavit of John Mueller is not the final version of the Terms and Conditions agreed upon and which governed the conduct of and rights and remedies available to the parties.

8

(Emphasis added).

This language operates to negate the venue language noted in the Proposal and specifically states that venue shall lie in the Eastern District of Wisconsin.

More particularly, the intent and effect of Paragraph 1 was to nullify the venue and choice of law provisions upon which PP relies in an attempt to transfer venue of this case to New Jersey.

The intent and effect of Paragraph 16 was to obtain and maintain venue in Wisconsin. The Machines were built at the request of and for the benefit of Curwood, with its main plant and location in Oshkosh, Wisconsin. Indeed, PP's relevant communications (in person, fax, phone, voicemail, email) to Curwood were directed to Curwood's location in Oshkosh.

Alternatively, and without waiving the foregoing, if the Court determines that Curwood's venue language contained in its Purchase Order does not, in and of itself, allow venue in the Eastern District, PP's argument also ignores the claims by Curwood relating to the Buy Back Contract. The language upon which PP relies states "[a]ny litigation concerning this agreement shall be under the jurisdiction of a state or federal court located within New Jersey." (emphasis added). The agreement to which reference is made is the Proposal, not the Buy Back Contract. By its own terms, PP's venue language does not apply to the Buy Back Contract. As such, venue is proper in the Eastern District of Wisconsin.

Again alternatively, and without waiving any arguments above, if the Court does not find the above arguments persuasive, the venue provisions in the Proposal and in the Purchase Order cancel each other. In essence, the "battle of the forms" is a draw. If that is the case, the Court then should analyze PP's Motion under federal venue statutes, then perhaps Wisconsin's long arm statute.

9

## II. FEDERAL VENUE PROVISIONS PREVENT TRANSFER AND ALLOW VENUE IN THE EASTERN DISTRICT OF WISCONSIN

PP can only obtain a change of venue "[f]or the convenience of the parties and witnesses, in the interest of justice…" 28 U.S.C. § 1404. PP has the burden of showing New Jersey is "a clearly more convenient" forum. *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Great weight must be afforded a plaintiff's venue choice. *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368, (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed 37 (1979). Also, contradicting PP's reasoning in its Motion, a venue clause in a contract is not dispositive under § 1404(a). *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988).

This case should remain in the Eastern District of Wisconsin because a plaintiff's choice of forum governs unless circumstances point elsewhere. *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). A transfer of venue should be denied when the only effect would be to shift inconvenience from the defendant to the plaintiff. *Kleinerman v. Luxtron Corp.*, 107 F.Supp.2d 122 (D. Mass. 2000) ("Transfer is not appropriate where its effect is merely to shift inconvenience from one party to another"). Where Curwood has filed suit in its home district, where all of its facilities and employees are located, and where it was the victim of a breach of contract, warranty and misrepresentation concerning not one, but two contracts, substantial weight should be given to that choice of forum.

While 28 U.S.C. § 1404(a) authorizes transfers for convenience, the facts weigh heavily in favor keeping this action in the Eastern District of Wisconsin. As an initial matter, the State of Wisconsin has a substantial interest in providing citizen of the state access to the federal court system. Additionally, Curwood's business headquarters, officers, and facilities are located in Oshkosh and New London, both of which are in the Eastern District of Wisconsin. All of

Curwood's documentary and tangible evidence with the exception of the Machines are located in the Eastern District of Wisconsin. Most of Curwood's potential witnesses are located in Wisconsin. Curwood's trial counsel is located in Wisconsin (Oshkosh), as is PP's trial counsel (Green Bay). Curwood would be extremely inconvenienced if this Court transfers this matter to New Jersey.

## III. WISCONSIN'S LONG ARM STATUTE PERMITS VENUE IN THE EASTERN DISTRICT OF WISCONSIN[3]

Federal courts have venue and jurisdiction only if the state in which the federal court sits would have jurisdiction. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995), *cert. denied*, 518 U.S. 1004, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). When considering this issue, the court is permitted to consider affidavits as well as facts alleged in the complaint. *Kaufmann v. United States*, 840 F.Supp. 541, 649 (E.D.Wis. 1993). Any conflicts in the affidavits are to be resolved in favor of the plaintiff. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Finally, Wisconsin's long arm statute fund at § 801.05, stats. "is to be liberally construed in favor of exercising jurisdiction." *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994), and is intended to reach to the fullest possible extent. *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990).

### A. **Wis. Stats. § 801.05(5)(a) – (e)**

**1.** Wis. Stats. § 801.05(5)(a) states venue and jurisdiction are proper in Wisconsin as follows:

---

[3] Curwood recognizes that § 801.05, stats. governs personal jurisdiction and PP has not argued this Court lacks such jurisdiction over it. However, this argument is presented alternatively and in an abundance of caution because in diversity cases such as this, venue and jurisdiction are sometimes confused and/or argued interchangeably.

11

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:

\*\*\*

**(5) Local services, goods or contracts.** In any action which:

(a) Arises out of <u>a promise, made anywhere to the plaintiff</u> or to some 3rd party for the plaintiff's benefit, <u>by the defendant</u> to perform services within this state or <u>to pay for services to be performed in this state by the plaintiff;</u>
(emphasis added).

The relevant language of this section allows venue in the Eastern District if PP made a promise to Curwood to pay for services performed in Wisconsin by Curwood. *Harley Davidson Motor Company v. Motor Sport, Inc.*, 960 F.Supp. 1386, 1389 (E.D. Wis. 1997). That is exactly what occurred with the formation of and Curwood's completion of its obligations under the Buy Back Contract. Under that agreement, PP agreed to buy the Machines back from Curwood for $240,000 and a credit to Curwood for the last invoice not paid under the Proposal. In exchange, and in reliance on that promise to pay, Curwood relinquished, title, ownership and control of the Machines to PP and shipped them back to New Jersey. Curwood performed those services for PP, in Wisconsin, based on PP's promise to pay for the Machines. As a result, under § 801.05(5)(a), stats., venue is proper in the Eastern District because venue would be proper in Wisconsin.

**2.**      Wis. Stats. § 801.05(5)(b) states venue and jurisdiction are proper in Wisconsin as follows:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:

12

***

**(5) Local services, goods or contracts.** In any action which:

(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or <u>services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant;</u>
(emphasis added).

This language permits venue in the Eastern District if Curwood performed services for PP in Wisconsin and PP authorized or ratified that performance. *Harley Davidson* at 1389.

As stated above, that is what Curwood did. It gave PP title, ownership and control of the Machines and shipped them to PP in New Jersey. PP did not merely authorize or ratify that conduct, it specifically requested it when promising to pay Curwood the agreed price. Therefore, venue is proper in the Eastern District of Wisconsin.

**3.** Wis. Stats. § 801.05(5)(c) states venue and jurisdiction are proper in Wisconsin as follows:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:

***

**(5) Local services, goods or contracts.** In any action which:

(c) Arises out of <u>a promise, made anywhere to the plaintiff</u> or <u>to some 3rd party for the plaintiff's benefit, by the defendant to deliver</u> or receive <u>within this state</u> or to ship from this state goods, <u>documents of title, or other things of value;</u>
(emphasis added).

Under this section of the long arm statute, venue is permitted if PP made a promise to Curwood to deliver to Wisconsin documents of title of other things of value. *Harley Davidson,*

13

*Id.* PP not only promised, but actually did deliver title to the Machines to Curwood in Oshkosh. Additionally, PP delivered a Machine to Degussa for the benefit of Curwood. Even though the Machine was delivered to California, through its dealings with Curwood in Wisconsin, PP shipped a Machine, a thing of value, for the benefit of Curwood. Because of this, venue in the Eastern District is proper under § 801.05(5)(c), stats. as well.

    **4.**    Wis. Stats. § 801.05(5)(d) states venue and jurisdiction are proper in Wisconsin as follows:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:
>
>                ***
>
>   **(5) Local services, goods or contracts.** In any action which:
>
>     (d) Relates to <u>goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction;</u>
> (emphasis added).

This portion of Wisconsin's long arm statute allows venue in the Eastern District if PP ordered or directed Curwood to send title or other things of value from Wisconsin to New Jersey and Curwood complied. This first occurred when the parties were trying to remedy the defects in the Machines. At the specific direction of PP, Curwood fabricated parts for the Machines in its machine shop in New London, Wisconsin, and shipped those parts to PP.

    Conduct satisfying this portion of the statute again occurred with the Buy Back Contract. PP told Curwood to relinquish title, ownership and control of the Machines and ship the one back from California to New Jersey. Curwood did this without hesitation. This situation specifically conforms to the requirements of § 801.05(5)(d). Venue is proper in Wisconsin.

14

**5.** Wis. Stats. § 801.05(5)(e) states venue and jurisdiction are proper in Wisconsin as follows:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:
>
> ***
>
> **(5) Local services, goods or contracts.** In any action which:
>
> (e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred.
> (emphasis added).

This venue language allows this case to remain in Wisconsin if title or other things of value were received by Curwood in Wisconsin from PP. Again the answer is yes – especially since PP has admitted as much. Specifically, ¶11 of the Original Complaint[4] alleged when the first Machine was sent to California, that "operated to transfer title, ownership, possession and property of the Machines to Curwood." In ¶11 of its Answer to the Original Complaint, PP admitted this allegation. Therefore, under this provision of the statute as well, venue is appropriate in Wisconsin.

**B.**    **Wis. Stats. § 801.05(1)(d)**

Additionally, and without waiving any of the arguments so far raised, if the Court determines that the specific activities listed above do not confer venue on this Court under § 801.05(5), stats., PP had substantial contacts with Wisconsin to permit venue under § 801.05(1)(d).

---

[4] This allegation remained as ¶11 in the First Amended Complaint filed January 18, 2008.

## 1.    The Statute.

Wis. Stats. § 801.05(1)(d) states venue and jurisdiction are proper in Wisconsin as follows:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:
>
> **(1) Local presence or status.** In any action whether arising within or without this state, against <u>a defendant</u> who when the action is commenced:
>
> ***
>
> (d) <u>Is engaged in substantial and not isolated activities within this state,</u> whether such activities are wholly interstate, intrastate, or otherwise. (emphasis added).

Under this provision of Wisconsin's long arm statute, venue is proper in the Eastern District if PP had sufficient contacts with Wisconsin, either through its dealings with Curwood in this matter, or at other times, to fairly require it to defend here. This is especially appropriate when the "case is substantially related to the reason that the defendant has any contacts with the forum state." *Harley-Davidson*, at 1392.

A defendant "is engaged in substantial activities in the state, when the activities are 'systematic and continuous.'" *Id.* at 1389. A defendant has substantial activities if it "solicits, creates, nurtures, or maintains, whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." *Dorf v. Ron March Company*, 99 F.Supp.2d 994, 997 (E.D. Wis. 2000), quoting *Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992). Even if a defendant "never sets foot in Wisconsin, the existence of a continuing business relationship with someone in Wisconsin is enough to warrant...the defendant...be required, as a *quid pro quo*, to submit to the jurisdiction of the state's courts." *Id.* A defendant's lack of physical presence in Wisconsin does not preclude a finding of venue,

16

*Harley-Davidson* at 1389, and even if a defendant's relationship with Wisconsin "is very limited, yet related to the plaintiff's cause of action, a court may still find that the defendant has minimum contacts for the purpose of the case." *Id.* at 1391.

In *Nagel v. Crain Cutter Co.*, 50 Wis.2d 638, 184 N.W.2d 876 (1971), the Wisconsin Supreme Court listed five factors relevant to the inquiry: (1) the quantity of contacts; (2) the nature and quality of the contacts; (3) the source of the contacts and their connection with the case; (4) the interests of Wisconsin; and (5) the convenience of the parties. *Id.* at 648-50. An examination of each of these factors reveals PP had more than enough contact with Wisconsin to allow venue to remain here.

Regarding the first and second factors, the quantity, nature and quality of PP's contact with Wisconsin was significant. PP initially contacted Curwood in Wisconsin by fax outlining the idea of the three-way business venture with Degussa. The president of PP, John Mueller, then immediately traveled to Wisconsin to meet personally with Curwood representatives. "[T]he highest quality contact is a personal visit...The next highest quality contact is a personal contact of another type" *Dorf* at 997.

The personal meeting in Wisconsin was then followed with more written communication by Mueller to Curwood in Oshkosh. During negotiation of the Proposal, while attempting to work through the problems with the Machines, and again during negotiation of the Buy Back Contract, PP contacted Curwood by email, fax, US Mail and phone. Additionally, in October 2004, without request by Curwood, Mueller sent to Curwood's Meat Market Manager in Wisconsin, two additional alternative proposals for a separate machine.

The third factor, the source of the contacts, is likewise strong. Virtually each contact Curwood had in Wisconsin with PP was with Mueller, PP's president. It is hard to imagine a

17

more significant contact source than the company president. Also, the source is strong because Curwood's "lawsuit arises directly from defendant's Wisconsin contacts made in creating and nurturing the agreement[s] which defendant is alleged to have breached." *Dorf* at 998.

The last two factors, Wisconsin's interest and convenience of the parties are of less importance, *Id.*, but are nonetheless met as well. Certainly, and as outlined in Section II above, "Wisconsin has an interest in protecting its residents from breach of contract" *Id.* That interest is only heightened when the defendant is alleged to have stolen property from the Wisconsin resident under false pretenses (1st A. Compl. ¶¶39-45 - Fourth Cause of Action – property loss through fraudulent misrepresentation, Wis. Stats. § 895.446). "Wisconsin's interest in seeing its resident's disputes resolved at home is obvious, as is [Curwood's] interest in obtaining convenient and effective relief in its own state." *Harley-Davidson* at 1393.

When examining convenience, Curwood's business headquarters and facilities are located in Oshkosh and New London, Wisconsin. All of Curwood's documentary and tangible evidence with the exception of the Machines are located in Wisconsin as well. Most of Curwood's potential witnesses are located in Wisconsin but only one PP witness, Mueller, is located in New Jersey. Curwood's trial counsel is located in Wisconsin, as is PP's trial Counsel. Curwood would be extremely inconvenienced if this Court transfers this matter to New Jersey. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Harley-Davidson* at 1393, quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

This Court has permitted venue to remain in the Eastern District of Wisconsin in the past under similar circumstances. In *PKWare v. Meade*, 79 F.Supp.2d 1007 (E.D.Wis. 2000), an

Ohio defendant was found to have an ongoing business relationship, for jurisdictional purposes, in Wisconsin when contact was by mail, fax and phone, but only one personal visit. *Id.* at 1013.

### 2. Constitutional Issues

Compliance with the Wisconsin long-arm statute is presumed to satisfy the requirements of due process as well. The presumption may be rebutted by a defendant using the five factors analyzed above, *Lincoln v. Seawright,* 104 Wis.2d 4, 10-11, 310 N.W.2d 596 (1981), or by looking to federal law.

"Due process permits a Wisconsin court to exercise jurisdiction over a defendant who has 'minimum contacts' with this state such that maintenance of a lawsuit here 'does not offend 'traditional notions of fair play and substantial justice.' " *Dorf* at 998, quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

In the Seventh Circuit, in a breach of contract case, "it is only the dealings between the parties regarding that contract that are relevant to the minimum contacts analysis." *Dorf,* at 999 (internal citation omitted). "The touchstone is whether the defendant purposefully established minimum contacts in the forum state such that jurisdiction is fair and just for that case." *Id.,* citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Constitutionally, venue is proper in Wisconsin if PP, through its conduct regarding the Proposal and the Buy Back Contract, could reasonably anticipate being sued here. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62, L.Ed.2d 490 (1980).

As outlined above, PP's contacts in Wisconsin began with an unsolicited written communication from its president to Curwood, followed shortly thereafter by a personal visit.

19

PP also contacted Curwood on numerous other occasions by fax, phone, email and U.S. Mail for over two years – all in connection with the Proposal and the Buy Back Contract. "Where a defendant who has purposefully directed his activities to forum residents seeks to defeat [venue], he must present a compelling case that the presence of some other considerations would make [venue] untenable." *Dorf* at 999; citing *Burger King* at 477, 105 S.Ct. 2174. PP cannot meet this heavy burden.

### CONCLUSION

PP relies solely on venue language in boilerplate terms and conditions in the Proposal in its attempt to transfer venue of this case to New Jersey. This language was superseded by Curwood's own language in its Purchase Order, allowing venue in Wisconsin. At worst, each venue provision cancels the other, leaving federal statutory venue provisions and the Wisconsin long arm statute as controlling. Under the federal scheme, the more convenient venue is Wisconsin, and under Wisconsin's long arm statute, there are multiple sections, each independently allowing venue to remain here. A determination of venue under this statute is presumed constitutionally valid and PP cannot present the "compelling" case that other considerations would make venue in Wisconsin unreasonable or unfair. For all of these reasons, it is respectfully requested that PP's Motion to Transfer Venue to New Jersey be denied and venue be maintained in the Eastern District of Wisconsin.

Respectfully submitted this 7th day of February, 2008.

s/ Mark. F. Yokom
Mark F. Yokom*, State Bar No. 1036416
James E. Braza, State Bar No. 1002850
Davis & Kuelthau, s.c.
Attorneys for Plaintiff, Curwood, Inc.

*P.O. ADDRESS:
219 Washington Ave., 2nd floor
Oshkosh, WI 54901
Telephone: (920) 233-6050
myokom@dkattorneys.com

P.O. ADDRESS:
111 East Kilbourn Ave., Suite 1400
Milwaukee, WI 53202-6613
Telephone (414) 276-0200
jbraza@dkattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Tina M. Dahle, Mark F. Yokom. This document was also sent via interoffice e-mail to James E. Braza, Davis & Kuelthau, Milwaukee office.

s/ Mark F. Yokom
Mark F. Yokom, State Bar No. 1036416
Attorney for Defendant
Davis & Kuelthau, s.c.
219 Washington Avenue
P.O. Box 1278
Oshkosh, WI 54903-1278
Telephone: (920) 233-6050
Facsimile: (920) 233-8528
E-mail: myokom@dkattorneys.com