UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CURWOOD, INC.,

    Plaintiff,

v.                                                             Case No. 07-C-544

PRODO-PAK CORPORATION,

    Defendant.

**ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This diversity case arises out of a dispute between the buyer and seller of two packaging machines. Plaintiff Curwood, Inc., ("Curwood") agreed to purchase the machines that were to be manufactured by Defendant Prodo-Pak Corporation ("Prodo-Pak"), and then leased at no cost to Degussa Flavors and Fruit Systems US, LLC ("Degussa") in return for Degussa agreeing to purchase a minimum monthly amount of packaging material from Curwood. The original agreement broke down, however, when the first machine failed to meet Degussa's requirements, and Degussa terminated its lease with Curwood. Prodo-Pak then offered to buy the machines back from Curwood so that it could modify them and sell them to a customer in Singapore. Prodo-Pak agreed to pay Curwood $303,931.25 for the two machines comprised of a payment from Prodo-Pak to Curwood of $240,000 and cancellation of the final payment Curwood still owed Prodo-Pak on the original purchase price. Under the terms of the "buy-back" agreement, Prodo-Pak was to make the required payment to Curwood at the time it received the proceeds from an irrevocable letter of credit that was to be issued to Prodo-Pak's Singapore customer or by December 1, 2005. When

Prodo-Pak failed to make the promised payment, Curwood commenced this action in which it asserted various contract and tort claims against Prodo-Pak.

The case is presently before me on Curwood's motion for summary judgment on two of those claims. Curwood seeks summary judgment on its claim that Prodo-Pak breached the agreement to buy back the two machines by failing to pay Curwood the $240,000 it promised. Curwood also seeks summary judgment on its statutory claim of theft by fraud pursuant to Wis. Stat. § 895.446. For the reasons that follow, Curwood's motion will be granted as to the breach of contract claim and denied as to the claim for fraud.

## DISCUSSION

**A. Breach of Contract**

Curwood argues that it is entitled to summary judgment on its claim that Prodo-Pak breached the buy-back agreement by failing to pay the $240,000 it promised to pay by December 1, 2005, in return for the two packaging machines that Curwood had originally purchased from Prodo-Pak. Curwood contends that the evidence establishes without dispute that Prodo-Pak entered into such an agreement and that Curwood performed its part of the agreement by transferring title to the machines to Prodo-Pak. The evidence also establishes without dispute that Prodo-Pak failed to pay Curwood for the machines. Based on these facts, Curwood argues it is entitled to judgment on its breach of contract claim as a matter of law. Curwood also claims it is entitled to interest and collection costs, including attorneys fees, pursuant to the invoice that it sent Prodo-Pak on or about December 9, 2005, for payment under the buy-back agreement.

Prodo-Pak does not deny that it agreed to pay Curwood $240,000 and waive the last payment due on the original purchase of the packaging machines in exchange for return of the machines so that Prodo-Pak could modify the machines and sell them to a third party. Nor does Prodo-Pak deny that Curwood transferred title to the machines back to it pursuant to this agreement and that it has failed to pay Curwood the amount promised. Prodo-Pak contends, however, that there was more to the agreement than a repurchase of the machines. Curwood also agreed, Prodo-Pak contends, that it would attempt to place Prodo-Pak machines with its customers in return to Prodo-Pak's repurchase. Prodo-Pak claims that Curwood breached this part of the agreement. Prodo-Pak also contends that the repurchase price agreed to by the parties was based on the belief that the cost of the modifications required for the machines would be $100,000. In fact, the cost of the required modifications was more than three times that amount. Based on this mutual mistake, Prodo-Pak argues the contract must be reformed. Neither argument has merit.

Prodo-Pak concedes, as it must, that the writings of the parties say nothing about Curwood having any obligation to attempt to place Prodo-Pak machines with its customers. Prodo-Pak contends, however, that there is parol evidence that supports its contention that Curwood agreed to assist Prodo-Pak in this manner. That evidence consists of the affidavit of John Mueller, Prodo-Pak's president, wherein Mueller avers:

> In addition to the exchange of letters, I had discussions with Jeff Hopp [Curwood's Marketing Manager] regarding Curwood continuing to place Prodo-Pak machines with its customers. He told me they would continue to do so, they never did or attempted to. If Prodo-Pak had known that Curwood would not attempt to place its machines its would not have accepted the machines back.

(Aff. of John Mueller ¶ 8.) Under New Jersey law, which Prodo-Pak contends is controlling, parol evidence is liberally allowed. If a jury believes this evidence, Prodo-Pak suggests, and further finds

3

that Curwood made no attempt to place Prodo-Pak machines with its customers, it could find that Curwood breached the agreement and is not entitled to the damages it seeks.

Although Prodo-Pak is mistaken in its contention that New Jersey law applies, it makes no difference to the outcome. Wisconsin, like New Jersey, has adopted the more liberal version of the parol evidence rule. Compare *Federal Deposit Ins. Corp. v. First Mortg. Investors*, 250 N.W.2d 362, 365 (Wis. 1977), and *Conway v. 287 Corporate Center Associates*, 901 A.2d 341, 346-47 (N.J. 2006). Under either State's version of the rule, however, Prodo-Pak's evidence is inadmissible. The parol evidence rule can be stated as follows:

> When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.

*Federal Deposit Ins. Corp.*, 250 N.W.2d at 156; *see also Conway*, 901 A.2d at 346 ("In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document."). Extrinsic evidence may be used to aid in the interpretation of an agreement. *Id.* But it may not be used to change the writing or add to its terms:

> Such evidence is adducible only for the purpose of interpreting the writing-not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant.

*Conway*, 901 A.2d at 347.

The buy-back agreement at issue here was set forth in a July 21, 2005 letter from Mueller to Hopp. Mueller wrote:

> Prodo-Pak has agreed to purchase from Curwood/Bemis the two machines for the sum of $240,000 (two hundred forty thousand and 00/100 dollars). In addition to

4

> this payment, a credit will be issued to Curwood/Bemis in the amount of $63,931.25 (sixty-three thousand nine hundred thirty-one and 25/100 dollars) representing the final payment or balance due Prodo-Pak on the second machine. The payment will be made to Curwood/Bemis at the time Prodo-Pak receives the proceeds for the Letter of Credit or by December 1, 2005.

(Aff. of Jeffrey L. Hopp, Ex. B.) In closing, Mueller stated,

> I believe this accuratly summaries [sic] our discussions. A purchase order from Prodo-Pak to Curwood/Bemis will be issued as final confirmation. Please advise if any additional comments or corrections are required.

(*Id.*) Curwood offered no additional comments or corrections, and the terms stated in Mueller's letter were then incorporated in Prodo-Pak's purchase order issued on July 29, 2005 (Hopp Aff., Ex. D.)

From the foregoing, it is clear that Mueller's own letter was intended to serve as "a complete and exclusive statement of the agreement." Wis. Stat. § 402.02(2). It thus follows that Prodo-Pak may not supplement the terms of the agreement by recounting oral representations that were allegedly made in the course of the negotiations. *Id.* Accordingly, Mueller's testimony about additional terms of the agreement allegedly breached by Curwood is not admissible and cannot preclude entry of summary judgment.

Even if Mueller's testimony was admissible, the result would be the same. Mueller's statement, by its terms, falls short of creating a material issue of fact. A statement by Prodo-Pak's president that Curwood's marketing director told him he would continue to try to place Prodo-Pak machines with Curwood's customers in the course of discussing other matters does not create a contractual obligation to do so. A contractual obligation is created by a promise made in return for consideration. When directly asked whether there were any unwritten terms of the buy-back agreement, Mueller made no mention of any promise by Curwood to place Prodo-Pak machines

5

with its customers. (Mueller Dep. (Mueller Aff., Ex. A) at 113.) Although Mueller may have hoped that Curwood would continue to place Prodo-Pak's machines, it is clear from his own testimony that the purchase price for the two machines Curwood returned to Prodo-Pak was not conditioned on continued business. (*Id.* at 125-27.) It thus follows that Prodo-Pak's claim that Curwood breached the agreement must fail.

Prodo-Pak also claims that the agreement should be reformed to credit the true cost of the repairs, which the parties grossly underestimated. Prodo-Pak asserts that the Buy-Back Contract was based upon a mutually mistaken belief that modifications to the machines would be $100,000.00, when in fact, the modifications were "three times that. Because of the mutual mistake, Prodo-Pak contends the contract should be reformed. (Br. Opp. at 7.)

A mutual mistake is reciprocal and common to both parties to a contract "where each alike labors under a misconception in respect to the terms of the written instrument." *Continental Cas. Co. v. Wis. Patients Compensation Fund*, 164 Wis. 2d 110, 117, 473 N.W. 2d 584, 587 (Wis. Ct. App. 1991) (citation omitted). However, mutual mistake must be based upon a past or present fact, not a future one. *Id*. at 118, 473 N.W.2d at 587 (citation omitted). "Future facts rest in conjecture and both parties are assumed responsible for considering the possibility that such facts may occur." *Id*. A party's failure to consider a possibility, however remote, that a fact might occur may reflect poor judgment or lack of forethought, but it does not illustrate mutual mistake. *Id.*

The facts here do not support a claim of mutual mistake. The cost of modification of the machines was a future fact. It was Prodo-Pak's responsibility to determine the cost of modifying the machines before offering to buy them back from Curwood. Prodo-Pak has offered no evidence suggesting that the price it agreed to pay Curwood for the machines was conditioned on the cost of

6

the modifications that were needed before they could be sold to Prodo-Pak's customer in Singapore. In fact, there is no reason to believe that Curwood even knew what repairs were contemplated. The failure to consider the increased cost of modification may reflect poor judgment or lack of forethought on Prodo-Pak's part, but it does not, as was the case in *Continental*, illustrate mutual mistake. It therefore follows that Prodo-Pak is not entitled to reform the contract. Based on the undisputed evidence before me, I therefore conclude that Prodo-Pak is in breach of the buy-back agreement and that Curwood is entitled to summary judgment on that claim.

Curwood also claims that it is entitled to interest at the maximum rate permitted by law and collection costs, including actual attorneys fees, because a provision allowing it such interest and collection costs was included in the invoice it sent Prodo-Pak on December 9, 2005, after Prodo-Pak failed to make the promised payment when it became due. In support of its argument, Curwood relies upon U.C.C. § 2-207, codified in Wisconsin as Wis. Stat. § 402.207, and the Seventh Circuit's decision in *Advance Concrete Forms, Inc. v. McCann Const. Specialties Co.*, 916 F.2d 412 (7th Cir. 1990).

U.C.C. § 2-207 addresses the problem that arises when parties to a sale send conflicting forms confirming their agreement. James J. White and Robert S. Summers, *Uniform Commercial Code* § 1-3 (2003). In general, it provides that an agreement exists even when the acceptance of the offer contains terms additional to and different from those contained in the offer, unless the acceptance is expressly made conditional on assent to the additional or different terms. Wis. Stat. § 402.207(1). The additional terms are construed as proposals for addition to the contract and, as between merchants, become part of the contract unless the offer expressly limits acceptance to the terms stated therein; the additional terms materially alter it; or notification of objection to the

7

additional terms has already been given or is given within a reasonable time after notice of them is received. Wis. Stat. § 402.207(2). In *Advance Concrete* the Court held that an invoice allowing the seller 18% interest on any unpaid balance did not materially alter the offer within the meaning of § 402.207(2) and thus became part of the agreement between the parties when the buyer failed to make a timely objection. 916 F.2d at 415. Curwood argues that the terms of its invoice providing for interest and collection costs did not materially alter the agreement, and since Prodo-Pak did not object, they became part of the agreement pursuant to § 402.207(2).

Curwood's argument fails, however, because Wis. Stat. § 402.207 only applies to "[a] definite and seasonal acceptance or a written confirmation which is sent within a reasonable time." Curwood's invoice containing the additional terms was not sent until some five months after Prodo-Pak had issued its purchase order and Curwood delivered title to the machines. Indeed, by the time Curwood issued its invoice containing the additional terms, Prodo-Pak had already completed the repairs on one of the machines and delivered it to its Singapore customer. By that time, it was too late for Prodo-Pak to object to the additional terms. It had already accepted delivery and acted in reliance on the absence of those terms. Under these circumstances, Wis. Stat. § 402.207 does not apply. But this does not mean that Curwood is not entitled to prejudgment interest on the $240,000 that it is owed. It simply means that the prejudgment interest owed by Prodo-Pak is limited to the statutory rate of 5%. Wis. Stat. § 138.04. Curwood is not entitled to attorneys fees, however.

**B. Theft by Fraud and Wis. Stat. § 895.446**

Wisconsin Statutes § 895.446 was enacted to provide a treble damages remedy to victims of certain intentional property crimes. *See Tri-Tech Corp. of Am. v. Americomp Servs.*, 2002 WI

8

88, ¶ 20, 254 Wis. 2d 418, ¶ 20, 646 N.W.2d 822, ¶ 20. The burden of proof in a civil action under this statute lies with the person who suffers damage or loss to prove the loss or damage by a preponderance of the evidence. Wis. Stat. § 895.446(2). Section 943.20(d) of the Wisconsin Statutes states that whoever "[o]btains title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with the intent to defraud, and which does defraud the person to whom it is made. . . ." is subject to criminal penalty. Wis. Stat. § 943.20(d). *Tri-Tech* holds that theft by misrepresentation is a specific intent crime, and the person claiming theft by misrepresentation must prove intent by a preponderance of the evidence. *See Tri-Tech*, 2002 WI 88, ¶ 30. For Curwood to prevail on this claim at summary judgment, then, it must conclusively establish that at the time it obtained title to the machines Prodo-Pak made a false representation, which it knew to be false, with the intent to deceive Curwood, and that Curwood was in fact deceived. Curwood has not established these elements.

Curwood alleges that Prodo-Pak made a false representation that it knew to be false when it stated that it would pay Curwood $240,000.00 for the packaging machines on December 1, 2005. (Pl.'s Br. Supp. Mot. Summ. J. 13.) Curwood has produced no evidence, however, that conclusively establishes that Prodo-Pak did not intend to pay Curwood at the time it agreed to do so. In other words, Curwood has failed to prove the specific criminal intent required for a claim under § 895.446 *See Tri-Tech*, 2002 WI 88, ¶ 32. Although the fact that Prodo-Pak has not paid is arguably circumstantial evidence that Prodo-Pak never intended to pay, it is certainly not so overwhelming as to warrant summary judgment in Curwood's favor. Otherwise, every nonpayment under a contract could be considered fraud. There are many reasons that parties fail to make payments due under a contract, and seldom is it because they had no intent to pay from the very beginning.

9

Indeed, Prodo-Pak denies having any intent to defraud Curwood in this case. It claims it did not pay Curwood because Curwood failed to place its machines with its customers and the cost of modifying the machines was far greater than it anticipated. While legally insufficient, neither of these explanations suggest fraud.

When assessing whether there are any factual issues to be tried, the court must view the facts in the light most favorable to the nonmoving party, and draw all reasonable inferences and resolve any ambiguities against the moving party. *Sterling Vision, DKM, Inc. v. Gordon*, 976 F. Supp. 1194, 1196 (E.D. Wis. 1997); *see also* Fed. R. Civ. P. 56(c). Viewing the facts in the light most favorable to Prodo-Pak, the nonmoving party, it is clear that the evidence does not establish criminal intent as a matter of law. Accordingly, summary judgment on Curwood's claim of theft by fraud will be denied.

**IT IS THEREFORE ORDERED** that Curwood's motion for partial summary judgment as to the contract claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Curwood's motion for partial summary judgment on its claim under Wis. Stat. § 895.446 is **DENIED**. The Clerk is directed to set this matter on the calendar for a Rule 16 conference to address further proceedings.

Dated this   4th   day of May, 2009.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge